IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

JUDY HUGHES                                                                  PLAINTIFF

V.                                                         CIVIL ACTION NO. 2:07CV026-SAA

HOLLYWOOD CASINO CORPORATION                        DEFENDANT

MEMORANDUM OPINION

Defendant Hollywood Casino Corporation has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The district court's jurisdiction over these federal claims rests upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636(c), all parties consented to have a United States Magistrate Judge conduct the proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to decide these motions.

FACTUAL SUMMARY

The plaintiff, a female, began her employment as a table games dealer with the Hollywood Casino Tunica, owned by HWCC-Tunica, Inc., on August 7, 2000. HWCC-Tunica, Inc., and not "Hollywood Casino," was actually the plaintiff's employer during the time period in issue in this case. During the plaintiff's employment she received satisfactory employee performance appraisals or evaluations on at least four or five occasions. She also received the following disciplinary actions for various indiscretions:

      1.        April 17, 2005: written warning stating that the casino's Surveillance Department

1

    had video recorded plaintiff falling asleep on the job (plaintiff denies that she was actually asleep);

2.  October 12, 2005: written warning for failing to notify management of a romantic relationship with table games floor supervisor, Danny Foppiano, in violation of the written policy restricting personal relationships in the workplace;

3.  August 5, 2006: "Final Written Counseling"notice for violation of policy regarding restricting personal relationships in the workplace;

4.  September 7, 2006: written warning documenting a three-day suspension from work without pay for sleeping on or at her table while on duty;

5.  October 20, 2006: written counseling notice for verbally arguing with another employee while on duty and making discriminatory comments to another employee.

  While the plaintiff was employed with HWCC-Tunica, she had an affair with Danny Foppiano, the floor supervisor on plaintiff's shift, the swing shift. Dep. of Judy Hughes, pp. 32-33. Plaintiff testified that the relationship began after plaintiff began driving Foppiano to work, at the request of Foppiano's wife. *Id.* At 39. Foppiano did not have a valid driver's license due to a DUI, and was unable to drive himself. *Id.* at 38. They began a sexual relationship approximately one month later, and the relationship lasted for approximately one and a half years. *Id.* at 79.

  The plaintiff was terminated on October20, 2006 – a little less than three months after she reported the affair with Foppiano to supervisors at Hollywood casino, for the stated reason that she made discriminatory remarks to a co-worker which were directed toward the co-worker and

the Vice President of Casino Operations, Joseph Stronski, and that she argued with co-workers while on duty. Plaintiff filed a charge of sex discrimination and retaliation with the Memphis district office of the U.S. Equal Employment Opportunity Commission ("EEOC") on November 13, 2006, alleging that she was subject to a hostile work environment arising from sexual harassment by Danny Foppiano and that she was retaliated against for reporting this harassment. The EEOC issued a right to sue letter on the following day, stating that it could find no information to establish any violations of federal employment discrimination statutes. The plaintiff filed the instant case on February 20, 2007 alleging employment discrimination "based on sex and/or age of the plaintiff," sexual harassment, retaliatory discharge and wrongful termination.

The defendant filed its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on March 7, 2008, raising a number of issues regarding the merits of the plaintiff's arguments, as well as two issues addressing the technical aspects of plaintiff's claims. First, defendant seeks dismissal because plaintiff failed to exhaust her administrative remedies in that she did not name the proper entity as her employer. The court holds that even though the plaintiff did not technically name the proper entity – naming Hollywood Casino as her employer instead of HWCC-Tunica – the proper party had actual notice of the suit, and failure to name the proper defendant in this specific case is a remediable defect that had no bearing on the defendant's preparation for trial. Accordingly, the defendant's motion for summary judgment for plaintiff's failure to name the proper employer is denied. *See Jackson v. Westin Galleria Hotel* 2002 WL 1827641, *1, at FN1 (N.D. Tex. 2002). Second, the defendant argues that plaintiff failed to exhaust her administrative remedies for her claim of age discrimination because she

failed to file an age discrimination charge with the EEOC. The plaintiff concedes this issue, and the defendant's motion for summary judgment regarding plaintiff's claims of age discrimination shall be granted.

## LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000), citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## DISCUSSION

A. Statute of Limitations

To bring claims under Title VII, a plaintiff must first exhaust her administrative remedies. *Tolbert v. U.S.*, 916 F.2d 245, 247 (5th Cir. 1990), and to do that, she must file a discrimination charge with the EEOC no more than 180 days from the date of the alleged discriminatory act. This 180-day time period acts as a statute of limitations which prohibits individuals who fail to comply with the time limit from filing suit under Title VII. *Hood v. Sears Roebuck and Co.*, 168 F.3d 231, 232 (5th Cir. 1999). In this case, the defendant argues, and the plaintiff acknowledges, that any claims for actions which occurred more than 180 days before the filing of the first EEOC charge on November 13, 2006 are barred by operation of this statute of limitations. Accordingly, any claims of sexual harassment or discrimination growing out of acts that occurred prior to May 15, 2006, are barred.

5

The plaintiff had a relationship with Danny Foppiano that ended in the fall of 2005, but was resumed in May 2006, and they possibly had sexual relations as late as July 2006. Although her claims of sexual harassment by Danny Foppiano growing out of acts before May 15, 2006 are time-barred, her claims relating to Foppiano are not entirely time-barred, and those claims relating to plaintiff's relationship with Foppiano after May 15, 2006 are not barred by the applicable statute of limitations.

B.  Plaintiffs' Claims of Sexual Harassment

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C.A. § 2000e- 2(a)(1) (2000). The United State Supreme Court has recognized in Title VII sexual harassment cases a distinction between those based on threats that are carried out ( referred to as *quid pro quo* cases) and those where bothersome attentions or sexual remarks create a hostile work environment. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 751, 118 S. Ct. 2257, 2264, 141 L. Ed. 2d 633 (1998). By way of clarification, the Fifth Circuit has determined an approach courts should utilize following the Supreme Court's decisions in *Ellerth* and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998):

> At the first stop on the *Ellerth/Faragher* road map, courts are required to determine whether the complaining employee has or has not suffered a "tangible employment action." If he has, his suit is classified as a "quid pro quo" case; if he has not, his suit is classified as a "hostile environment" case. That determination provides a fork in the road on the *Ellerth/Faragher* map: In a "quid pro quo" case, the road branches toward a second stop at which the court must determine whether the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment. If the employee cannot show such a nexus, then his employer is not vicariously liable

6

under Title VII for sexual harassment by a supervisor; but if the employee can demonstrate such a nexus, the employer is vicariously liable per se and is not entitled to assert the one and only affirmative defense permitted in such cases since *Ellerth* and *Faragher*. In other words, proof that a tangible employment action did result from the employee's acceptance or rejection of sexual harassment by his supervisor makes the employer vicariously liable, *ipso facto;* no affirmative defense will be heard.

*Casiano v. AT & T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000).

To prevail on a *quid pro quo* claim of harassment, plaintiff must show that she suffered a tangible employment action at the hands of a supervisor. *Id.* at 283-84. According to the Supreme Court, tangible employment actions "require an official act of the enterprise, *i.e.*, a company act, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 283 n. 6, quoting *Ellerth,* 524 U.S. at 761-62, 118 S.Ct. 2257.

In this case, the defendant claims that the plaintiff cannot establish that she suffered any "adverse employment action" as defined by *Ellerth*. According to the defendants, "[p]laintiff has provided no genuine issue of material fact that she suffered any tangible employment action as a result of any purported sexual harassment alleged to have been committed by Danny Foppiano in that none of Plaintiff's allegations concerning her romantic affair with Mr. Foppiano are tied in any way to her termination of employment on October 20, 2006." *See* Defendant's Motion for Summary Judgment, p. 4. In further support of this contention, defendant points to plaintiff's response to an interrogatory requesting that plaintiff state all facts concerning her allegation that the actions of Danny Foppiano constitute sexual harassment:

> [T]he plaintiff was subjected to having to drive Danny Foppiano at a time when he was her immediate supervisor. It was during this period of time that Foppiano made sexual advance toward the Plaintiff. The Plaintiff took steps to avoid this

7

> behavior, but Foppiano continued to make sexual advances and to insist that Plaintiff had to drive him. Further, the Plaintiff was warned, by Foppiano, that if she told anyone in management of this behavior that they both could be terminated from their position with the Defendant.

See Docket No. 45, Ex. 3. A tangible employment action is one such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761-62. According to defendant, the plaintiff has not shown that she suffered any of these tangible employment actions thus she cannot prove she the necessary elements of a "*quid pro quo*" case. *Ellerth*, 524 U.S. at 753-54. The plaintiff asserts that she was terminated as the result of her relationship with Foppiano and that the reasons given for her termination, sleeping on duty and arguing with and making derogatory comments to a co-worker while on duty, were merely pretextual. In support plaintiff points to the affidavit of Joe Stronski, Vice President of Casino Operations, which states that he "had decided in connection with the second time Ms. Hughes was disciplined for violating the Personal Relationship in the Workplace Policy, on account of her relationship with Danny Foppiano, that any other future work rule infraction would likely result in termination. . . ." See Docket 45, Ex.1. Plaintiff also vehemently denies falling asleep on the job, stating that she was drowsy but not asleep, and denies making derogatory remarks about a co-worker's religion – Catholicism – noting that she is a practicing Catholic.

Taking all relevant facts the a light most favorable to the plaintiff, in particular the testimony and affidavit of Joe Stronski, the court concludes that there exists a genuine issue of material fact regarding whether the reason stated for the plaintiff's termination was merely pretextual and whether the plaintiff instead suffered a adverse employment action as the result of

8

the alleged sexual harassment by Foppiano. The defendant's motion for summary judgment regarding plaintiff's claim of a *quid pro quo* case is denied for this reason.

The plaintiff also claims that she was subject to a hostile work environment. In order to prove a claim of hostile work environment she must establish that:

1. She belongs to a protected class;

2. She experienced an "unwelcome sexual harassment;"

3. "The harassment complained of was based upon sex;"

4. The harassment "affected a term, condition or privilege of her employment;" and

5. Her employer HWCC-Tunica "knew or should have known of the harassment and failed to take prompt remedial action."

*Jones v. Flagship International*, 793 F.2d 714, 719 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065, 93 L. Ed. 2d 1001, 107 S. Ct. 952 (1987). This well-established five-part test has been revised in the wake of *Ellerth* and *Faragher* in that now, in Title VII harassment cases, if the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee must satisfy only the first four of the elements listed above. *Faragher*, 524 U.S. at 807. If the actions, if proved, would not constitute a "severe or pervasive sexual harassment," Title VII imposes no vicarious liability upon the employer. *Casiano*, 213 F.3d at 284. The question, then, is whether Foppiano's alleged conduct was sufficiently severe or pervasive to create an actionable hostile environment.

The Supreme Court has explained that "[i]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to

9

be so." *Faragher*, 524 U.S. at 810, citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370-371, 126 L. Ed. 2d 295 (1993). On this issue the Court directed trial courts to examine all relevant circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted).

In this case, the conduct that plaintiff alleges as the crux of her claims is that she was required to drive Foppiano to work and that he made "sexual advances" toward plaintiff and in fact had sexual relations with the plaintiff on several occasions in plaintiff's car, in the woods, and at the plaintiff's home. The defendant argues that plaintiff's claims regarding her affair with Foppiano are time-barred because plaintiff testified her affair ended in the fall of 2005 and would therefore be time barred. However, undisputed facts show that the relationship between Foppiano and plaintiff did end in Fall 2005, but began again in May 2006 and was ongoing as late as July 2006.

Thus, although plaintiff's claims relating to Foppiano's actions before May 15, 2006 are barred by the statute of limitations actions after that date would not be barred by the statute of limitations and would be applicable to the instant claim if Foppiano was the plaintiff's supervisor at the time of the incident. And although defendant argues that plaintiff was moved to a different shift from Foppiano after she reported the affair and its termination to management in the Fall of 2005, evidence submitted by defendant in both the affidavit of Robin Horton and the Hollywood Casino Security Department written statement of Robin Horton acknowledges that there is some likelihood that, despite the fact that defendant moved plaintiff from the swing shift – on which it is uncontested that Foppiano was plaintiff's supervisor – to the graveyard shift, it was possible

that their shifts could overlap thus making Foppiano plaintiff's supervisor for a portion of her graveyard shift. See Docket No. 45, Exs. 18 and 18-A. If this was the case, it is possible that plaintiff could show a jury that she experienced an "unwelcome sexual harassment," that "was based upon sex," it "affected a term, condition or privilege of her employment," and it was committed by plaintiff's supervisor.

Taking all legitimate factual inferences in favor of the plaintiff, the court is not satisfied that no reasonable trier of fact could find that the alleged conduct against the plaintiff in this case was not sufficiently severe or pervasive to meet the Title VII burden. The defendant's motion for summary judgment as to the plaintiff's claim of a hostile work environment is denied.

The defendant argues that even if Foppiano's conduct rose to the level of a hostile work environment, defendant is nevertheless entitled to summary judgment based on the *Ellerth/Faragher* affirmative defense. As stated by the Supreme Court:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. *See* Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807. According to the defendant, plaintiff has not put forth any evidence that Foppiano's sexual advances were unwelcome, and consequently plaintiff, in allowing his advances, did not take advantage of the preventive or corrective opportunities which defendant provided when it moved plaintiff to another shift. While the court agrees with defendant that

11

many of the facts in this case, including the terms used by plaintiff to describe the relationship between herself and Foppiano – affair, relationship, seduced – tend to show that Foppiano's advances were actually welcomed by the plaintiff, there is evidence that plaintiff was upset by the relationship and had previously asked to be moved from the same shift as Foppiano.  The evidence may be weak, but the court cannot say that there exists no genuine issue of material fact as to this issue.  Accordingly, the court holds that the defendant has not at this stage met its burden in establishing the affirmative defense.  *See Hampton v. Gannett Co., Inc.*, No. CIV.A. 3:02-CV-134BN, 2003 WL 22989329, at *722-23 (S.D. Miss. Dec. 15, 2003).  The defendant's motion for summary judgment is denied as to the plaintiffs' hostile work environment claim.

    C.    Plaintiffs' Claims of Retaliation

Plaintiff alleges defendant retaliated against her for reporting Foppiano's alleged conduct as sexual harassment by "both moving of the plaintiff to the graveyard shift and the termination of the plaintiff" from her employment.  Complaint, ¶35.  The court has held that the plaintiff's claims related to her being moved to the graveyard shift are time-barred by the 180-day statute of limitations; moreover, the evidence establishes without dispute that plaintiff requested and consented to being moved to the graveyard shift after her relationship with Foppiano terminated in the fall of 2005.  However, plaintiff's claims regarding termination of her employment in October 2006 remain viable.

In order to establish a claim of retaliation, a plaintiff must prove:

1.    That she was engaged in an activity protected by Title VII;

2.    The defendant subjected her to an adverse employment action; and

3. A causal nexus exists between the plaintiffs' participation in the protected activity and the adverse employment action.

*Scrivner v. Socorro Ind. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999). The Fifth Circuit has held that "[t]o carry her ultimate Title VII burden, an employee must also show that her employer would not have taken the adverse employment action 'but for' the employee's participation in the protected activity." *Scrivner*, 169 F.3d at 972 citing *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). The plaintiff alleges that her termination in October 2006 was retaliatory and that the defendant's stated reasons for terminating her amount to nothing more than pretext. Given the facts before the court at this time, the court cannot find that the plaintiff has failed to establish a *prima facie* case even though the evidence provided by plaintiff at this stage of the litigation is slight. Thus although the court cannot grant summary judgment for the defendant, the plaintiff will need substantially more evidence to prevail on her retaliation claims at trial. *See Grimes v. Texas Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139 (5th Cir. 1996) (conclusory allegations, unsubstantiated assertions, and subjective beliefs alone are insufficient to support discrimination claim).

D. Plaintiffs' State Law Claims

The plaintiff also sues for "wrongful termination," apparently under Mississippi common law. Defendant argues that plaintiff was an "employee-at-will," that plaintiff has admitted in response to interrogatories, that she was an employee at will, and that Mississippi law grants defendant the right to terminate the plaintiff for a good reason, a wrong reason, or no reason at all. *See McCrory v. Wal-Mart Stores, Inc.,* 755 So.2d 1141, 1142 (Miss. Ct. App. 1999). Under long standing principles of Mississippi common law and Mississippi's employee-at-will doctrine,

either the employee or the employer may terminate the employment relationship of an at-will employee unless the parties are bound by an employment contract, at any time and for any reason. Given that the plaintiff's acknowledgment in response to defendant's Interrogatory No. 15 that she was an at-will employee, plaintiff's claims of wrongful termination are without merit. The court holds that the defendant's motion for summary judgment as to plaintiff's state law claim of wrongful termination is granted.

## **CONCLUSION**

In accordance with the foregoing, the defendant's motion for summary judgment will be granted in part and denied in part. A separate order in accordance with this opinion will issue this day.

This the 22nd day of May, 2008.

          /s/ S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE